IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MARTY JORDAN, | ) | Case No. 4:05CV3104 |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| BNSF RAILWAY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the defendant's motion for summary judgment (filing 34). After careful consideration of the parties' evidence (filings 36, 41, 79, 80, 83)[1] and briefs (filings 35, 76, 82), I conclude that there is no genuine issue of material fact to be tried, and that the motion should be granted.

This is an employment discrimination case. As described by the plaintiff, Marty Jordan, the case is not complicated:

> Jordan, an African-American male, has filed a 42 U.S.C. §1981 lawsuit because the disciplinary hearing held pursuant to the Collective Bargaining Agreement between his union and the Defendant [BNSF Railway Co.] was significantly different than two other disciplinary hearings held pursuant to the same Collective Bargaining Agreement for similarly situated white employees. Three employees had disciplinary hearings as a result of complaints from Inter-motel [sic] Leasing employees who worked at the Ravenna, Nebraska facility. [Intermotel Leasing ("IML") has a contract with BNSF to provide lodging services for BNSF employees who need to stay in Ravenna, Nebraska, when the crews are changed. See Defendant's statement of material facts, ¶ 8 (filing 35, at 5-6).] The two white employees who were accused of

---

[1] The plaintiff has filed a motion to strike portions of affidavits filed in conjunction with the defendant's reply brief. That motion (filing 84) will be denied.

misconduct were suspended for a period of days.  The white employees were given the name[s] of their accusers in advance and said accusers appeared at the disciplinary hearings in person.  Mr. Jordan was not given the names of his accusers prior to the his hearing nor did said accusers testily [sic] in person, despite Mr. Jordan's request/ [sic] Obviously without knowing the names of the accusers he had no opportunity to arrange for their appearance.  The defendant allowed the complaining witnesses against the plaintiff to testify by telephone.

(Filing 76, at 1-2.)  In other words, Jordan complains that he was treated differently from two similarly situated white BNSF employees because (1) he was discharged for misconduct rather than suspended, (2) prior to the disciplinary hearing he was not told the names of the IML employees who had accused him of misconduct, and (3) his accusers testified by telephone rather than in person.

## DISCUSSION

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  See also Egan v. Wells Fargo Alarm Servs., 23 F.3d 1444, 1446 (8th Cir.1994).  It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue.  Bell v. Conopco, Inc., 186 F.3d 1099, 1101 (8th Cir. 1999).  In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion.  Dancy v. Hyster Co., 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with "'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'"  Moody v. St. Charles County, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting

Gregory v. City of Rogers, 974 F.2d 1006, 1010 (8th Cir. 1992)).  "A mere scintilla of evidence is insufficient to avoid summary judgment."  Id.  Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Rule 56(e) provides that, when a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 250.  Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."  Celotex, 477 U.S. at 324.

Summary judgment is disfavored in employment discrimination cases, as such cases are "inherently fact-based."  Mayer v. Nextel West Corp., 318 F.3d 803, 806 (8th Cir.2003) (quoting Keathley v. Ameritech Corp., 187 F.3d 915, 919 (8th Cir.1999)).  Nonetheless, summary judgment is proper when a plaintiff fails to establish a factual dispute on an essential element of his case.  Simpson v. Des Moines Water Works, 425 F.3d 538, 542 (8th Cir. 2005).

Absent direct evidence of discrimination, § 1981 claims are analyzed under the burden-shifting framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  <u>See</u> <u>Maxfield v. Cintras Corp. No. 2</u>, 427 F.3d 544, 550 (8th Cir. 2005).

> "Under the <u>McDonnell Douglas</u> framework, a presumption of discrimi-nation is created when the plaintiff meets [her] burden of establishing a prima facie case of employment discrimination.  A minimal evidentiary showing will satisfy this burden of production." <u>Pope</u>, 406 F.3d at 1006-07 (citations omitted).[2] Once the plaintiff establishes a prima facie case of discrimination, "[i]t then falls to the employer to promulgate a non-discriminatory, legitimate justification for its conduct, which rebuts the employee's prima facie case." <u>Sprenger v. Fed. Home Loan Bank of Des Moines</u>, 253 F.3d 1106, 1111 (8th Cir.2001) (citing <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).  If the employer meets its burden, "the presumption of discrimination disappears, requiring the plaintiff to prove that the proffered justification is merely a pretext for discrimination." <u>Pope</u>, 406 F.3d at 1007.  The plaintiff has the burden of persuasion at all times.  <u>Id.</u>

<u>Rodgers v. U.S. Bank, N.A.</u>, 417 F.3d 845, 850 (8th Cir. 2005).

In order to establish a prima facie case of discrimination, Jordan must show that: (1) he is a member of a protected group; (2) he was qualified for his position; (3) he was discharged; and (4) the discharge occurred under circumstances giving rise to an inference of discrimination.  <u>See</u> <u>id.</u> (citing <u>Davenport v. Riverview Gardens Sch. Dist.</u>, 30 F.3d 940, 944-45 (8th Cir.1994)).  The first and third elements are undisputed.  Although BNSF argues that Jordan was not qualified for his position because he was guilty of misconduct, this argument improperly conflates the three steps of the McDonnell Douglas burden-shifting analysis.  <u>See</u> <u>Schmittou v. Wal-Mart Stores, Inc.</u>, No. Civ. 011763, 2003 WL 22075763, *4 (D.Minn. Aug. 22, 2003) (rejecting employer's argument that discharged employee was not qualified because of her poor attendance record).  The mere fact that Jordan worked for BNSF for six

---

[2] <u>Pope v. ESA Services, Inc.</u>, 406 F.3d 1001, 1006 (8th Cir.2005).

years suggests that he was qualified for his position.  Thus, the focus must be on the fourth element of the prima facie case, which Jordan can prove by putting forth facts that similarly situated BNSF employees, who are not African-American, were treated differently.  See Rodgers, 417 F.3d at 850-51 (citing Wheeler v. Aventis Pharms., 360 F.3d 853, 857 (8th Cir.2004)).  At the prima facie stage of the McDonnell Douglas burden-shifting framework, a "low threshold" applies for employees to be considered similarly situated; it must be shown that the employees "are involved in or accused of the same or similar conduct and are disciplined in different ways."  Id., at 851.

The evidence shows that on June 13, 2003, it was reported that Jordan had exposed his genitals and made lewd propositions to female IML employees at the Ravenna facility on two separate occasions.  Jordan's supervisor, Ron Hall, immediately suspended Jordan from work and ordered an investigation.  Based on interviews of the IML employees, Hall decided to hold a formal hearing, which took place on June 27, 2003.  Based on the hearing testimony, Hall determined that Jordan was guilty of "sexual harassment and immoral conduct," in violation of BNSF's written rules and policies, and that termination of Jordan's employment was the appropriate sanction.  This decision was approved by BNSF's Director of Employee Performance in Texas, and by BNSF's General Manager in Nebraska, and, on September 23, 2004, was affirmed by a Public Law Board on appeal.

Jordan has presented evidence that two white BNSF employees, Charles Calhoun and Tony Irons, engaged in similar misconduct at the Ravenna facility, but that they were not discharged.  BNSF argues that Jordan's misconduct was more serious than that of Calhoun and Irons, and that several other factors also make their cases dissimilar, but this argument properly pertains only to the pretext stage of the McDonnell Douglas analysis, where the test for determining whether employees are similarly situated is "rigorous."  At the prima facie case stage, the "similarly situated" test is "not onerous."  See Wheeler, 360 F.3d at 857 (citing Williams v. Ford Motor Co., 14 F.3d 1305, 1308-09 (8th Cir.1994)).  Jordan has shown that Calhoun was

-5-

accused of threatening  a female IML employee, that Irons was accused of sexually harassing a female IML employee, and that while both men were disciplined by BNSF, neither man was discharged.  This is a sufficient showing to shift the burden to BNSF to justify its decision to discharge Jordan.  BNSF has easily met this burden by stating that Jordan was discharged for immoral conduct and sexual harassment, and has even shown that his discharge was upheld on appeal.[3]

Because BNSF has articulated a legitimate, non-discriminatory reason for its decision, Jordan must show that he, Calhoun, and Irons were "similarly situated in all relevant respects."  See Williams, 14 F.3d at 1309.  "Specifically, the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances."  Cherry v. Ritenour School Dist., 361 F.3d 474, 479 (8th Cir. 2004).  "Employees are similarly situated when they are involved in or accused of the same offense and are disciplined in different ways."  Wheeler, 360 F.3d at 858 (emphasis in original) (quoting Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir.1994)).  "To be probative evidence of pretext, the misconduct of more leniently disciplined employees must be of 'comparable seriousness.'"  Harvey, 38 F.3d at 972-73 (quoting Lanear v. Safeway Grocery, 843 F.2d 298, 301 (8th Cir.1988)).  See also Russell v. TG Missouri Corp. 340 F.3d 735, 745 (8th Cir. 2003) (it is not necessary to prove that the violations were identical, just that they were of "comparable seriousness").

No specifics have been provided concerning the white employees' misconduct. Jordan has only offered general statements by Ron Hall that Calhoun was charged

---

[3] "The burden to articulate a nondiscriminatory justification is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence." Floyd v. State of Missouri Dept. of Soc. Servs., Div. of Family Servs., 188 F.3d 932, 936 (8th Cir.1999).  The burden is merely one of production and not of proof. Hannoon v. Fawn Engineering Corp., 324 F.3d 1041, 1047 (8th Cir. 2003).

with "belligerence and threatening of a maid in Ravenna," and that Irons was accused of "sexual harassment of a maid . . . [a]t Ravenna."  (Filing 79, at 6, 8 (Hall dep. 29:12-15; 30:19-23).)  Such evidence is not sufficient to satisfy Jordan's burden of proving the "comparable seriousness" of the employees' offenses.[4]  Jordan's claim that he was discriminated against because Calhoun and Irons were only suspended therefore fails as a matter of law.[5]

---

[4] There is no question that Jordan's acts of "sexual harassment and immoral conduct" were serious offenses.

> According to the record, [Jordan] was accused of two instances of sexual misconduct toward female housekeeping employees at [BNSF's] contract lodging facility in Ravenna, Nebraska.  One woman described how he exposed himself to her when she was cleaning Room 664 at approximately 2:45 p.m. on June 8, 2003.  She also described her difficulty in persuading [Jordan] to leave her alone when [Jordan] tried to shut the door to the room with her still inside.  She related how the episode made her fearful of [Jordan] and how she remained in the room for more than an hour, with the door locked after he left, because she wanted to make certain he was gone.  A second woman explained how [Jordan] had encountered her in the laundry room approximately one year earlier.  At that time he grabbed her hand and placed it on his penis while making suggestive remarks.

(Public Law Board decision, at 1 (Filing 36, Exhibit 1F).)

[5]Although Jordan alleges that during the course of his employment "he was treated in a different and adverse manner by management level and/or supervisory employees of [BNSF]," (Complaint, ¶ 12), he has presented no direct evidence of racial animus. Jordan only cites his own deposition testimony in which he states that Ron Hall's "demeanor" caused him to think that he was being treated differently because of his race. (Filing 76, at 5; Filing 36, Exhibit 2B (Jordan dep. 41:3-42:11).) "Evidence, not contentions, avoids summary judgment." Haas v. Kelly Services, Inc., 409 F.3d 1030, 1036 (8th Cir. 2005) (quoting Mayer v. Nextel West Corp., 318 F.3d 803 , 809 (8th Cir. 2003).

Jordan also claims that he was discriminated against in two respects because his disciplinary hearing was not conducted in the same manner as the hearings that were afforded to Calhoun and Irons.  First, he claims that Calhoun and Irons were told the names of the complaining IML employees in advance of their hearings, but that he was not.  Jordan has not presented any evidence to support this claim; [6] BNSF, on the other hand, has shown that neither Calhoun nor Irons were provided advance notice of their accusers' identities, and, in Jordan's case, has shown that both women stated they did not want their names disclosed because they feared reprisal.  Second, Jordan complains that while the IML employees testified by telephone at his hearing, at Calhoun's and Irons' hearings they testified in person.  BNSF has shown, however, that its conduct in each case was exactly the same—that is, BNSF requested all of the complaining IML employees to appear at the hearings, but Jordan's accusers were unwilling to appear in person and would only consent to testifying by telephone. BNSF has also shown that it had no means of compelling the attendance of witnesses, and that it made no arrangements to procure the attendance of the complaining witnesses at Calhoun's and Irons' hearings—in other words, the IML employees appeared voluntarily at their own expense.  In Jordan's case, Ron Hall intended only to have the BNSF investigator who interviewed the two IML employees testify at the hearing, but Jordan, through his union representative, submitted a request that the IML employees attend the hearing; this request was conveyed to IML, but the employees declined to appear, whereupon BNSF made arrangements for them to testify by telephone.  Jordan's claims of disparate treatment concerning the conduct of his hearing thus fail at the first step of the <u>McDonnell Douglas</u> analysis.[7]

---

[6] Jordan has only presented evidence that the IML employee personally appeared at Irons' hearing because her attendance had been requested by the local chairman of his union.  (Filing 80-2, Morgan dep. 13:1-11.)

[7] Alternatively, even assuming that Jordan has established a prima facie case of discrimination, BNSF has offered a legitimate, non-discriminatory explanation as to why the IML employees testified by telephone rather than in person, and Jordan has presented no evidence to refute such explanation.

## CONCLUSION

There is no evidence from which a jury might reasonably infer that Jordan was fired on account of his race or that his pre-termination hearing was conducted in an allegedly unfair manner on account of his race.  Accordingly, summary judgment will be granted in favor of BNSF.

IT IS ORDERED that:

1.      Plaintiff's motion to strike evidence (filing 84) is denied.

2.      Defendant's motion for summary judgment (filing 34) is granted.

3.      Judgment shall be entered by separate document.


February 21, 2006.                              BY THE COURT:

                                                *s/Richard G. Kopf*
                                                United States District Judge